IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Sherry Kelley, ) | C/A No. 0:13-2176-JFA-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC. The plaintiff, Sherry Kelley, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be remanded for further consideration as explained below.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

PJG

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform her past relevant work; and

(5)   whether the claimant's impairments prevent her from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## ADMINISTRATIVE PROCEEDINGS

In January 2008, Kelley applied for DIB, alleging disability beginning December 25, 2006. Kelley's application was denied initially and upon reconsideration, and she requested a hearing

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



before an administrative law judge ("ALJ"). A hearing was held on July 24, 2009, at which Kelley, who was represented by Sandra W. Chipman, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on October 21, 2009 finding that Kelley was not disabled. (Tr. 148-61.) On March 25, 2011, the Appeals Council remanded the matter to the ALJ. (Tr. 167-68.) Kelley subsequently amended her alleged onset date to April 4, 2009. (Tr. 287.) A second hearing was held on October 19, 2011, at which Kelley appeared and testified and was represented by Paul T. McChesney, Esquire. After hearing testimony from a vocational expert, the ALJ issued a second decision on December 5, 2011 finding that Kelley was not disabled. (Tr. 20-39.)

Kelley was forty-three years old on her date last insured. (Tr. 256.) She has a high school education and past relevant work experience as a real estate broker, substitute teacher, and a sales person. (Tr. 295, 300.) Kelley initially alleged disability due to severe panic disorder, depression/anxiety, migraines, bad back, chronic pelvic inflammatory disease, and hives due to stress. (Tr. 294.)

In applying the five-step sequential process, the ALJ found that Kelley had not engaged in substantial gainful activity since her amended alleged onset date of April 4, 2009 through her date last insured of September 30, 2011. The ALJ also determined that, through her date last insured, Kelley's obesity, disorders of the back, migraine headaches, bipolar disorder, and anxiety were severe impairments. However, the ALJ found that, through her date last insured, Kelley did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that, through her date last insured, Kelley retained the residual functional capacity to

>perform reduced medium work as defined in 20 CFR 404.1567(c). . . . [T]he claimant can lift/carry 25 pounds frequently and 50 pounds occasionally. She can sit, stand and walk for six hours of an eight hour workday. She can never climb ropes, ladders or scaffolds. The claimant can frequently climb, stoop, balance, kneel, crouch, and crawl. She should avoid concentrated exposure to hazards. She is limited to simple one-two step tasks that are low stress jobs, defined as non-production work and only occasional contact with the public.

(Tr. 25.) The ALJ found that Kelley had no past relevant work, but that there were jobs that existed in significant numbers in the national economy that Kelley could have performed through her date last insured. Therefore, the ALJ found that Kelley was not disabled from April 4, 2009, the amended alleged onset date, through September 30, 2011, the date last insured.

Kelley submitted additional evidence to the Appeals Council, which denied her request for review on June 12, 2013 making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id.



Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

### ISSUE

Kelley raises the following issue for this judicial review:

> Treating physicians' opinions are entitled to great weight in the absence of compelling contrary evidence and may be entitled to controlling weight. The ALJ improperly gave little weight to the medical opinions of Dr. Loudermilk, which supported a finding of disability. Where the ALJ improperly disregards or ignores the opinion evidence, has a legal error been committed that is not harmless?

(Pl.'s Br., ECF No. 13.)

### DISCUSSION

Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, " 'if a physician's opinion is not supported by clinical evidence or if it is

inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that

> a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id., at *5.

The record reveals that Dr. Eric Loudermilk, Kelley's treating pain specialist, began treating Kelley in April 2007 and treated her through December 2008. In May 2009, Dr. Loudermilk evaluated Kelley after not seeing her for six months and resumed treatment of her. Dr. Loudermilk issued two opinions regarding Kelley's limitations. On July 23, 2009, Dr. Loudermilk indicated that "[i]t is my professional opinion that Sherry Kelley is unemployable at this time due to her chronic back pain and mental health issues which include bipolar disorder, depression, anxiety, and panic attacks." (Tr. 564.)

On September 12, 2010, Dr. Loudermilk signed another opinion stating that he had been treating Kelley "for some time, primarily for musculoskeletal problems," and noting that Kelley was "taking fairly strong pain medications, including Oxycodone, in order to attempt to control the pain

that results from her back condition." (Tr. 669.)  Dr. Loudermilk stated that Kelley's MRI showed "a moderately severe, mechanical back condition that most probably cause[s] a significant degree of pain."  (Id.)  Dr. Loudermilk indicated that although some people with similar objective findings are able to function fairly well, others have more problems, and Kelley's problems were "aggravated by a fairly severe psychological condition."  (Id.)  Dr. Loudermilk stated that Kelley "has often spent the entire time in my office crying, while apologizing and trying to get control of herself" and "has exhibited emotional instability."  (Id.)  Dr. Loudermilk indicated that even though Kelley was doing better since getting psychiatric treatment and since her marriage has improved, Kelley "still has significant emotional issues that make it harder for her to deal with her pain.  And, her pain makes it harder to deal with her emotional troubles."  (Id.)  Finally, Dr. Loudermilk stated that "[c]onsidering both her mental and physical problems, it is most probable that, during the time I treated her, she would have difficulty attending to and concentrating on work without frequent interruptions to task."  (Id.)

The ALJ found that Dr. Loudermilk's opinions were entitled to little weight.  In reaching this conclusion with regard to the July 2009 opinion, the ALJ stated that the opinion (1) was issued just three months after the amended onset date; (2) is conclusory and without justification; (3) is inconsistent with other substantial evidence, including Dr. Loudermilk's treatment notes and his conservative treatment; and (4) opines on an issue reserved for the Commissioner. (Tr. 34-35.)  With regard to Dr. Loudermilk's September 2010 statement, the ALJ first observed that it appeared to be written by someone else and then signed by Dr. Loudermilk; however, the ALJ stated that questioning who authored the exhibit was not dispositive of the ALJ's conclusion to give the opinion little weight.  The ALJ also found that Dr. Loudermilk only treated Kelley on a follow-up basis, only administering medication that proved effective in controlling Kelley's pain, and that Kelley's

condition improved while under the care of Dr. Loudermilk. The ALJ found that Dr. Loudermilk's opinion relating to Kelley's mental condition is inconsistent with the longitudinal record, stating that part of Dr. Loudermilk's opinion is "predicated upon a mental condition [for which] he indicates the claimant had been receiving treatment from a psychiatrist. However, there is no evidence that since the amended onset date the claimant has received consistent treatment [from] a psychiatrist for her mental condition." (Tr. 35.) The ALJ further stated that Kelley did not return to Anderson-Oconee-Pickens Mental Health Center for mental health treatment in July 2009 and refused a mental health referral in January 2010. Moreover, the ALJ specifically stated that he found the following five reasons persuasive in concluding that Dr. Loudermilk's opinion was entitled to little weight:

> First, Dr. Loudermilk stopped treating the claimant in December of 2008. I asked the attorney at the hearing whether all medical evidence, treatment for the [] claimant had been submitted. **Coun[se]l for the claimant stated that all medical evidence that exists was submitted prior to the hearing.** Based on the representations of the claimant's attorney and the record I conclude no treatment has been rendered for the claimant since December of 2008. I find that his opinions are speculative in nature because he has not seen the claimant during the three-year period after his last visit. Second, his records are inconsistent with his opinion. For example the claimant reported to Dr. Loudermilk that she is pleased with her medications and her pain management, she's just returned from a vacation to Myrtle Beach, overall she is doing a lot better (Exhibit 19F). On another occasion, Dr. Loudermilk reported she suffers from depression and bipolar disorder, she is seeing Dr. Hossain, who has made tremendous improvement with her treatment. Depression better anxiety improved. Doing much better with current medications. Medications for pain and headaches has worked well, she is pleased with the result of her medications and her pain management (Exhibit 19F3). On her last visit with Dr. Loudermilk he reported that medications worked well for her, her home life has improved and there is emotional improvement (Exhibit 19 F2). Third, diagnostic tests failed to reveal underlying conditions that are reasonably likely to cause the severity of pain that is a predicate to Dr. Loudermilk's opinion. Likewise, physical findings are not consistent with his opinion. Magnetic imaging of the lumbar spine revealed mild lumbar spondylosis with no herniations (Exhibit 13F5). There was no significant nerve root compression (Exhibit 2F). She was reported to have only mild tenderness of the lumbar spine, straight leg raise was normal, she was able to touch her toes, had normal strength throughout, reflexes were 2+, gait was normal, and she was able to walk on her toes and heels (exhibits 2F, 1F, and 48F2). Fo[u]rth, reports about her mental issues are not consistent with his opinion. Medications were reported to help



> her depression and anxiety. She was found to be alert oriented times three, cooperative, mood bright, and only mildly anxious (Exhibit 21F). In another record she was reported to be alert and oriented to person place time and situation, cooperative, and had appropriate affect (Exhibit 48F). On other occasions she was reported to be alert and not depressed or anxious, mood and affect was appropriate and she was alert and oriented times three (Exhibits 42F2, 29F3, and 45F6). Fifth, activities of daily living and work activity that have been set forth throughout this decision are inconsistent with Dr. Loudermilk's opinion. I note that most of the reports of work activity are reported by Dr. Loudermilk. Finally, while I have only set forth factors in concluding little weight can be accorded Dr. Loudermilk's opinion I am fully aware that the claimant has severe impairment supported by diagnostic tests and physical exams which have been accommodated by my residual functional capacity.

(Tr. 35-36) (emphasis in original). Kelley challenges each of these reasons.

Upon review of the record and the parties' briefs, the court is unable to determine whether the ALJ's decision is supported by substantial evidence. Specifically, the court is unable to determine whether the ALJ's evaluation of Dr. Loudermilk's second opinion is supported in light of several pertinent errors, which are conceded by Commissioner. Specifically, contrary to the ALJ's first delineated reason for giving Dr. Loudermilk's opinion little weight, Dr. Loudermilk did not stop treating Kelly in December 2008. As stated above, Dr. Loudermilk evaluated Kelley in May 2009 after not seeing her for six months and resumed treatment of her. Therefore, the ALJ's finding that no treatment has been rendered for Kelley is error and the finding that Dr. Loudermilk's opinions are speculative because he has not seen Kelley during the three-year period after December 2008 is unsupported. Similarly, the ALJ's second delineated reason suffers from the same error, as the ALJ only points to records from December 2008 and earlier in finding that Dr. Loudermilk's records are inconsistent with his opinion. These errors are perplexing, as the ALJ specifically summarizes and

discusses Dr. Loudermilk's treatment notes from 2009 and 2010 elsewhere in his opinion.² (See, e.g., Tr. 23, 28, 30-31.) Nor can the court agree with the Commissioner that these errors are harmless, as at least half of the delineated reasons the ALJ provided for rejecting the treating physician's opinions, which impact many of the requisite factors, are unsupported by the record.

Accordingly, based on the record before the court, the court is constrained to remand this issue for further explanation and review of Dr. Loudermilk's opinions and continue with evaluation of Kelley's disability application, if necessary.³ Furthermore, in light of the court's recommendation that this matter be remanded for further consideration, the court need not address Kelley's remaining arguments, as they may be rendered moot on remand. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Moreover, if necessary, Kelley may present his remaining arguments regarding Dr. Loudermilk's opinions on remand.

---

² Moreover, the third reason offered by the ALJ includes a finding that "diagnostic tests failed to reveal underlying conditions that are reasonably likely to cause the severity of pain that is a predicate to Dr. Loudermilk's opinion." (Tr. 35.) To the extent that the ALJ is relying on the MRI results, Dr. Loudermilk specifically stated in his opinion that Kelley's MRI showed "a moderately severe, mechanical back condition that most probably cause[s] a significant degree of pain." (Tr. 669.) Therefore, in the absence of a conflicting expert medical opinion the ALJ has failed to adequately explain how this evidence undermines Dr. Loudermilk's opinions.

³ The court expresses no opinion as to whether further consideration of Dr. Loudermilk's opinions by the ALJ should lead to a finding that the opinions are entitled to controlling weight. Further analysis and discussion may well not affect the ALJ's conclusion on this point.



## RECOMMENDATION

Based on the foregoing, the court recommends that the Commissioner's decision be reversed pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be remanded to the Commissioner for further consideration as discussed above.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

October 2, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).